UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DAWN M. PATRYAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-256-PPS |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Dawn Patryas has appealed from an administrative law judge's denial of her applications for Social Security disability insurance benefits and supplemental security income. In doing so, she claims that the ALJ committed three errors which require a reversal of his decision. I will limit my discussion to one. Because the ALJ erred in his analysis of Patryas' migraines I will REVERSE the ALJ's decision and REMAND on this issue.

**Background**

Dawn Patryas applied for disability insurance benefits and supplemental security income on July 15, 2015, and December 18, 2015, respectively, claiming that as of March 31, 2012, she was disabled. [A.R.[1] 12.] Her claim was denied initially and denied again upon reconsideration. After that, she requested and had a hearing before

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 7. Citations are to the page number in the lower right-hand corner of the A.R.

an Administrative Law Judge on March 26, 2018. On July 3, 2018, the ALJ issued his written decision which once again denied Patryas benefits. She then took her case to the Social Security Appeals Council but achieved no better result. On May 31, 2019, the Appeals Council denied Patryas' request for review, meaning that the ALJ's written decision was the final decision as to his case. [*Id.* at 1.] She now seeks review of that decision.

It is unnecessary to detail Patryas' lengthy medical record; the ALJ has set that out in his opinion. [*See* A.R. 17–22.] Suffice it to say that the ALJ, based on the medical record, determined that Patryas had the severe impairments of degenerative disc disease, depression, anxiety, panic attacks, attention deficit hyperactivity disorder, marijuana abuse, and post-traumatic stress disorder. [A.R. 15.] The ALJ also found that Patryas had a variety of non-severe impairments, including colitis, insomnia, migraines, asthma, fibromyalgia, and obesity. The ALJ then determined that Patryas did not meet any of the applicable social security listings for disability.

At the next step, the ALJ determined Patryas's residual functional capacity (RFC). He determined that Patryas was capable of performing medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) but with the following limitations: she can frequently reach overhead with both upper extremities, but she can never climb ladders, ropes, or scaffolds, and never work at unprotected heights. She would be limited to a low stress environment, which the ALJ defined as no contact with the general public. She can work in proximity to others, but only with brief, incidental

interaction with others, and can perform no tandem job tasks requiring cooperation with other workers to complete the task. She could work where supervisors occasionally interact with her throughout the workday. She would be limited to performing simple, routine tasks and simple work-related decisions. [A.R. 17.]

At the hearing, the ALJ posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether or not such a hypothetical person with Patryas' RFC could likely find gainful employment. The ALJ determined that Patryas was unable to perform her past relevant work as a special education teacher or psychiatric aide, either as performed or as generally performed. [A.R. 23-24.] But he found that she could perform other jobs which exist in sufficient numbers in the national economy. As a result, the ALJ found that Patryas was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Patryas argues that the ALJ erred in evaluating her migraines. [DE 9 at 8.] Patryas argues that the ALJ mischaracterized evidence in finding her migraines to be non-severe, and that the ALJ failed to consider her migraines in crafting the RFC. The ALJ found that Patryas' migraines were a non-severe impairment because "she had a negative brain MRI, and did not treat longitudinally for this impairment." [A.R. 15.] The ALJ did not otherwise specifically discuss Patryas' migraines anywhere in the decision.

First, Patryas asserts that the ALJ ignored evidence in finding that she did not treat her migraines "longitudinally." According to the regulations, the term "disability"

-4-

means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The ALJ's finding that Patryas did not treat her migraines "longitudinally" reflects a position that the ALJ found she did not treat her migraines for a continuous period of twelve months or more. Yet there is evidence going all the way back to 2009 that Patryas told her doctor at a pain management appointment that she had been suffering from neck pain and headaches for ten years. [A.R. 674.] She reported that she took Zanaflex to help with the pain, which helped "to some extent." [A.R. 674.]

Then, in December 2016, Patryas saw her neurologist, Dr. James Kozelka, for the first time. [A.R. 824.] It was noted that she had previously been given tramadol to treat migraines (which were stopped after an insurance change) but was currently treating with ibuprofen, she reported daily headaches for over six years, and that her headaches caused photo/phono sensitivity. [A.R. 821, 824.] Patryas received Botox injections for her migraines in March 2017 and July 2017. [A.R. 820, 823.] At the second Botox injection, Dr. Kozelka stated that Patryas "clearly met criteria for chronic migraine" prior to her first injection. [A.R. 813.] He found that her headaches were present for almost two years, lasted more than four hours per headache, and they had "migrainous features such as photophobia[,] phonophobia and nausea." [A.R. 813.] Dr. Kozelka noted that she had an "excellent response to Botox treatment #1 with greater than 50%

reduction of her headaches." [A.R. 813.] Patryas testified at the hearing that she continues to get migraines two to three times to week, and that they often correspond with her panic attacks. [A.R. 60.] She stated that the Botox helped relieve her migraine pain minimally, but that she was having difficulties getting insurance to approve her next treatment. [A.R. 60.]

The record belies the assertion that Patryas' had not been treating here migraines "longitudinally." As noted, Dr. Kozelka specifically stated that she had been experiencing migraines for two years that were being treated with antidepressants, ibuprofen, and tramadol. [A.R. 813, 824.] The Commissioner asserts that only seven months of treatment exist, starting from December 2016 with the neurology consultation and ending in July 2017 with the second Botox injection. But that merely represents seven months of treatment *with her neurologist.* The medical record shows that Patryas was suffering from migraines for well over a year, and that she had been treating her migraines with tramadol and ibuprofen well before she started treatment with her neurologist in December 2016.

More problematic, however, is the ALJ's reliance on a "negative" brain MRI. Patryas underwent an MRI of the brain in January 2017. The MRI showed no abnormalities and was "unremarkable." [A.R. 801.] The ALJ used this MRI to discredit the severity of Patryas' migraines. This is an unfortunate example of the ALJ playing doctor. The truth is that Patryas' neurologist never used the MRI to conclude that she does not experience migraines. On the contrary, Plaintiff received Botox injections to

treat her migraines after her brain MRI showed no obvious causes of her migraines. [A.R. 820, 823.] In short, the ALJ diverged from the neurologist's opinion and substituted his own based on his own interpretation of Patryas' MRI results. Although the MRI showed no clear cause of her migraines, her neurologist continued to treat her migraines, indicating that the neurologist continued to acknowledge the existence and severity of the migraines. This is because MRI's are used to rule out any other causes of pain, not to rule out the existence of migraines. Indeed, the Seventh Circuit has made this precise point: MRI's are used "*to rule out other possible causes of headache* – such as a tumor – meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), citing "Migraines: Tests and Diagnosis," Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/migraine-headache/basics/tests-diagnosis/con-20026358 (visited Aug. 13, 2014) (emphasis in original). The ALJ's reliance on the MRI to conclude that Patryas is not experiencing *symptoms* or functional limitations with her migraines was in error.

      The Commissioner argues that Patryas did not allege migraines to be a severe impairment when she applied for SSI and DIB. The Commissioner then questions how Patryas could truly suffer from daily headaches and frequent migraines for six years if she did not cite headaches in her applications for benefits. [DE 10 at 4.] As an initial matter, the ALJ did not question the credibility of Patryas' claims of migraines based on her failing to include them in her disabling conditions in her applications. The Commissioner cannot make arguments that the ALJ did not consider in the decision.

This is impermissible *post hoc* rationalization. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). Furthermore, whether Patryas applied for benefits based on her headaches and migraines is irrelevant once the ALJ found that they caused some limitations on her level of functioning. Once the ALJ found her migraines to be a non-severe impairment, the ALJ is then required to discuss the impairment in full and provide a logical bridge from the evidence to the conclusion.

Even if a full analysis of Patryas' migraines were to result in the ALJ finding them to be non-severe, the ALJ is still required to discuss the migraines when determining the RFC. A claimant's residual functional capacity, or RFC, "describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010), citing 20 C.F.R. § 404.1523(c). *See also Thomas,* 745 F.3d at 807. The importance of this requirement to consider *all* limitations is such that "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

If the record does not show that the ALJ considered all of a claimant's impairments "in concert," a court "cannot say that the ALJ built the required 'accurate and logical bridge' between the evidence and her conclusion." *Thomas*, 745 F.3d at 807,

-8-

quoting *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). In order to determine Patryas' ability to work, the ALJ's analysis was required to include both severe and non-severe impairments "to determine their collective effect" on her ability to work. *Thomas*, 745 F.3d at 807. In other words, the analysis must be a holistic one. The ALJ's analysis of Patryas' RFC does not reflect consideration of her migraines and their potential impact on her ability to perform medium work with the limitations as described in the ALJ's decision. [A.R. 17]. This omission requires reversal for further consideration. *Denton*, 596 F.3d at 423. On remand, the ALJ should properly analyze Patryas' migraines and consider all of the relevant medical evidence.

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Patryas. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Dawn Patryas' application for Social Security disability benefits is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED on July 30, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT